IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **ROBERT GENE TIMMONS** | § | |
| xxx-xx-9859 | § | Case No. 05-60310 |
| and **JOYCE ANN TIMMONS** | § | |
| xxx-xx-3396 | § | |
| 230 Mosley Circle S., Longview, TX 75605 | § | |
| | § | |
| Debtors | § | Chapter 7 |

**EOD**
04/23/2007

| | | |
|---|---|---|
| BOB ANDERSON, Chapter 7 Trustee | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 05-6099 |
| | § | |
| HIBERNIA NATIONAL BANK | § | |
| | § | |
| Defendant | § | |

### MEMORANDUM OF DECISION

Now before the Court in the above-referenced adversary proceeding are "Plaintiff

Bob Anderson, Chapter 7 Trustee's Motion for Summary Judgment," and the

"Defendant's Motion for Summary Judgment" (collectively, the "Motions") filed by

Hibernia National Bank ("Hibernia" or "Defendant") in the above-referenced proceeding.

The Court, after reviewing the pleadings, including briefs in support and opposition to the

Motions, and considering the summary judgment evidence presented, finds that the

Plaintiff's Motion should be granted and the Defendant's Motion should be denied.[1]

---

[1] This Court has jurisdiction to consider the complaint pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157(a). The Court has the authority to enter a final judgment in this adversary proceeding since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (F) and (O).

## Factual Background

Robert Timmons, one of the debtors is the above-referenced bankruptcy case, was liable on a note to Hibernia. On April 23, 2002, three months prior to falling into default on that note, Robert Timmons transferred his interest in a piece of property (the "Eitelman Property") located in Gregg County, Texas, to the Timmons Family Holding Company, LLC ("TFHC"). TFHC had been formed on April 18, 2002 — only days before the transfer of the Eitelman Property. There is no dispute that Robert and Joyce Timmons were the only members and only officers of TFHC, and that they have always had the sole authority to manage it.

Some months later, after Robert Timmons fell into default on his note, Hibernia sought a judgment against him. On December 20, 2002, Hibernia was granted a judgment solely against Robert Timmons for $156,731.98. Hibernia then abstracted that judgment in Gregg County on February 13, 2003. At the time Hibernia abstracted its judgment, Robert Timmons owned no non-exempt real property in Gregg County.

On June 25, 2003, Hibernia sued Robert and Joyce Timmons as well as TFHC in state district court, asserting that they had engaged in transfers which were fraudulent as to Robert Timmons' creditors. In November 2004, Robert and Joyce Timmons and TFHC entered into a settlement agreement with Hibernia, wherein they agreed, without specifically admitting liability, that TFHC would convey the Eitelman Property, along with all funds in bank account #2200017693 held by TFHC at Austin Bank less the

-2-

amount of 2004 property taxes,[2] directly to Hibernia.  On December 10 and December 16, 2004 respectively, TFHC conveyed the Eitelman Property and the bank funds totaling $4,955.64 to Hibernia.

Fewer than ninety days thereafter, on February 14, 2005, the Debtors, Robert and Joyce Timmons, filed a petition for relief under Chapter 7 of the Bankruptcy Code.  Bob Anderson was appointed Chapter 7 Trustee.  On March 22, 2005, Anderson made demand upon Hibernia for payment of $130,000, reflecting the value of the Eitelman Property and the transferred bank funds, on the basis the transactions constituted impermissible preferential transfers.

**Discussion**

*Standards for Summary Judgment.*

The parties bring their respective motions for summary judgment in this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056.  That rule incorporates Federal Rule of Civil Procedure 56 which provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265

---

[2] The settlement agreement indicates, but does not precisely specify, that the Austin Bank funds represented post-transfer rental proceeds derived from the Eitelman Property.

(1986), *quoting* FED. R. CIV. P. 56(c). If a summary judgment motion is properly supported, a party opposing the motion may not merely rest upon the contents of its pleadings, but rather must demonstrate in specific responsive pleadings the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), *citing* FED. R. CIV. P. 56(e). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. at 2510.

For cases in which the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Mansker v. TMG Life Ins. Co.,* 54 F.3d 1322, 1326 (8th Cir. 1995); *Thompson Everett, Inc. v. Nat'l Cable Adver., L.P.,* 57 F.3d 1317, 1323 (4th Cir. 1995) ["A federal court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly."]. Here, neither party has asserted the existence of any disputed issues of material fact in their respective responses to each other's summary judgment motion.[3]

---

[3] Local Rule of Bankruptcy Procedure 7056(d) provides that motions for summary judgment submitted to this Court should conform to the format outlined in Local District Court Rule CV-56. That rule provides that motions for summary judgment should contain a "Statement of Material Facts," and that responses should contain a "Statement of Genuine Issues." CV-56 further provides that, "In resolving the motion for summary judgment, the Court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the 'Statement of Genuine Issues' filed in opposition to the motion...." As neither party included any "Statement of Genuine Issues" in its response to the opposed motion, the Court assumes the facts as asserted and supported by each party are admitted to exist without controversy, leaving no outstanding issue of material fact to preclude complete resolution of this case in a summary judgment context.

*Preferential Transfers.*

In order to avoid an allegedly preferential pre-petition payment, a plaintiff (in this case the Trustee) must prove by a preponderance of the evidence the following six elements: (1) the interest transferred was "an interest of the debtor in property"; (2) the transfer was "to or for the benefit of a creditor"; (3) the payment was made "for or on account of an antecedent debt"; (4) the transfer was made while the debtor was insolvent; (5) the transfer was made within 90 days before the date the petition was filed; and (6) the transfer enabled the creditor to receive more than such creditor would receive if the case were under Chapter 7, the transfer had not been made, and the creditor received payment of such debt to the extent provided by the provisions of title 11.  11 U.S.C. §547(b); *Union Bank v. Wolas*, 502 U.S. 151, 154-55, 112 S.Ct. 527, 529-30, 116 L.Ed.2d 514 (1991).

In the present case, only the first and last elements are in dispute.  Hibernia concedes that the challenged transfers made in settlement of its state court fraudulent transfer litigation against the Debtors and TFHC were for its benefit as a creditor, on account of antecedent debt, made at a time when the debtors were insolvent, and within 90 days of the bankruptcy filing.  However, Hibernia contends that the challenged conveyances from TFHC to Hibernia did not constitute transfers of an interest in property of the debtor and that, even if they did, the transfers did not enable Hibernia to receive more than it would have under the circumstances described in 11 U.S.C. §547(b)(5)(A)-(C).

*1. A transfer of an interest of the debtor in property.*

First, it should be noted that the Bankruptcy Code defines "transfer" in the

broadest possible terms, including, "each mode, direct or indirect, absolute or conditional,

voluntary or involuntary, of disposing of or parting with . . . an interest in property." 11

U.S.C. §101(54)(D)(ii). As the Fifth Circuit has noted, this definition "is comprehensive

and includes every conceivable mode of alienating [an interest in] property." *Cullen*

*Center Bank & Trust v. Hensley (In re Criswell)*, 102 F.3d 1411, 1415 (5th Cir. 1997).

The transfer which the Trustee seeks to avoid is the purported alienation which occurred

in settlement of the state court fraudulent transfer action.

The Bankruptcy Code does not, however, define the term, "interest of the debtor in

property." Nevertheless, the United States Supreme Court has held that in light of the

purpose of the preference avoidance statute, the term should be read to include "that

property that would have been part of the estate had it not been transferred [shortly]

before the commencement of the bankruptcy proceedings." *Begier v. IRS*, 496 U.S. 53,

58, 110 S.Ct. 2258, 2263, 110 L.Ed.2d 46 (1990); *In re Criswell*, 102 F.3d at 1416. So

the issue of whether the transfers in question were transfers of an interest of the debtor in

property turns on whether the interests thereby transferred would have been property of

the Debtors' estate but for the allegedly preferential transfers.

At first glance, Hibernia's position that the Eitelman Property and its proceeds

would not have been property of the bankruptcy estate seems plausible. There is no

-6-

question that legal title to the Eitelman Property prior to the challenged transfers was held by TFHC, and not by the Debtors. While the Debtors' interests in the limited liability company became property of the estate upon filing, property actually owned by the LLC did not. However, this facile analysis ignores a long-standing Fifth Circuit precedent in the area of avoidable transfers: "when a soon-to-be-bankrupt debtor fraudulently transfers property to shield it from his creditors, that debtor/transferor should be considered to have retained an *equitable* interest in the property so that it will continue to be considered 'property of the estate.'" *Criswell*, 102 F.3d at 1417, citing *Am. Nat'l Bank of Austin v. Mortgageamerica Corp. (In re Mortgageamerica Corp.)*, 714 F.2d 1266, 1275 (5th Cir. 1983).

The precise nature of this equitable interest remaining in the debtor is not entirely clear.[4] Certainly, a debtor holds the equitable interest not for his own benefit, but for the benefit of the body of unsecured creditors who were harmed by his fraudulent transfer. *Criswell*, 102 F.3d at 1417. The Court must admit its reticence to embrace the proposition that a debtor has the capacity to alienate an interest he holds solely for the benefit of his creditors. However, the same Fifth Circuit which first recognized the existence of the equitable interest in the fraudulent transfer context has also clearly held that this type of equitable interest constitutes an interest of the debtor in property sufficient to give rise to a preference action. *Id.* at 1415-18. In *Criswell*, the Fifth Circuit

---

[4] Other courts question its existence. *FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 130-31 (2d Cir. 1992); *In re Saunders*, 101 B.R. 303 (Bankr. N.D. Fla. 1989).

held that, by recording a judgment lien fewer than 90 days before a debtor's bankruptcy filing, but after the debtor had fraudulently transferred real property to a trust, the judgment creditor improperly received a preferential transfer. In so doing, the Circuit held that, by abstracting its judgment, the creditor attached to the debtor's equitable interest in real property.[5] Thus, under the binding precedent of *Criswell* and, in light of the broad definition of "transfer," the Court concludes that this equitable interest[6] in the Eitelman Property would have been available to unsecured creditors immediately before the settlement among Hibernia, TFHC, and the Debtors, and was no longer available immediately after the settlement. Hence, a transfer of an interest of the debtor in property occurred as a result of the consummation of the settlement agreement between Hibernia and the Debtor.[7]

---

[5] The Court must acknowledge that *Criswell* never harmonizes its holding with what appears to be established Texas law that abstracted judgment liens do not attach to equitable interests in property, *Adams v. Impey*, 131 S.W.2d 288, 290 (Tex. Civ. App.– Beaumont 1939, no writ); *Gamer v. Love*, 41 S.W.2d 356, 359 (Tex. Civ. App.– Fort Worth 1931, writ dism'd w.o.j.) — a proposition which had been recognized by earlier Fifth Circuit decisions. *See, e.g., Citizens Nat'l. Bank v. Taylor (In re Goff)*, 812 F.2d 931, 933 (5th Cir. 1987).

[6] It is important to note that §541 of the Bankruptcy Code broadly defines the bankruptcy estate to include "all legal *or equitable* interests of the debtor in property as of the commencement of the case." 11 U.S.C. §541(a)(1) (emphasis added).

[7] The parties also dispute the confines within which property belonging to a third party but under the control of the debtor becomes property of the bankruptcy estate. Finding that this property constituted an interest of the debtor in property under the alternative theory of distinguishing legal and equitable title, the Court, while noting that the cited cases are easily distinguished, finds it unnecessary to consider the precise limits of the control doctrine.

*2. That enabled the creditor to receive more that it would have otherwise received.*

Hibernia next contends that, even if these allegedly preferential transfers were transfers of an interest of the debtor in property, they did not enable Hibernia to receive more than it would have received if the case were under Chapter 7, the transfers had not been made, and Hibernia had received payment of such debt to the extent provided under other provisions of the Bankruptcy Code. 11 U.S.C. §547(b)(5). Hibernia's argument in this regard is dependent upon its theory that, by abstracting its underlying state court judgment in the land records of the proper county after the allegedly fraudulent transfers, Hibernia became a secured creditor, and as such, would have [under the circumstances set forth in §547(b)(5)(A)-(C)] received all that it actually did receive, regardless of the allegedly preferential transfers. Hence, Hibernia calls upon the Court to determine the legal effect of filing an abstract of judgment against a debtor *after* the debtor's fraudulent transfer of property.

Colorable arguments exist which suggest that, because a fraudulent transfer is voidable under Texas law,[8] properly abstracting a judgment after a fraudulent transfer

---

[8] Under prior Texas law, fraudulent transfers were void and not voidable. *Texas Sand Co. v. Shield*, 381 S.W.2d 48, 54 (Tex. 1964) ["...a conveyance which is found to be fraudulent as to creditors is wholly null and void as to such creditors under the provisions of Articles 3996 and 3997, Vernon's Annotated Civil Statutes."]. Hence, a line of cases exists which suggests that abstracting a judgment after a debtor has fraudulently transferred property creates a judicial lien on the fraudulently transferred real property. *See id.*; *Eckert v. Wendel*, 40 S.W.2d 796 (Tex. 1931). However, a change in Texas law has rendered the underpinnings of such decisions untenable. *In re Harman*, 243 B.R. 671, 674 (Bankr. N.D. Tex. 1999) ["Texas law now provides that fraudulent transfers are 'avoidable,' not 'void.' With the transfer no longer void under Texas law, the rationale of the *Texas Sand* and *Eckert* courts no longer applies. Now, in Texas, legal title does not remain with the debtor and the court cannot assume that the creditor obtains a lien as if the transfer had not been made. Fact, not fiction, now prevails."].

-9-

could result in a creditor retaining a secured interest when the fraudulent transfer is

avoided. The Fifth Circuit lent support to such an argument by stating in dicta:

> The transferee [of a fraudulent transfer] may have colorable title to the
> property, but the equitable interest- at least as far as the creditors (but not
> the debtor) are concerned- is considered to remain in the debtor so that
> creditors may attach or execute judgment upon it as though the debtor had
> never transferred it.

*Mortgageamerica*, 714 F.2d at 1275. If creditors "may attach or execute judgment as

though the debtor never transferred" the property, then one could reach the logical

conclusion that the effect of abstracting a judgment after the fraudulent transfer would be

the attachment of the abstracted judgment to the transferred property.

However, this position is inconsistent with Texas law.[9] Current Texas law stands

for the proposition that abstracted judgments attach only to legal, and not equitable,

interests in real property. *Goff,* 812 F.2d at 933; *Adams*, 131 S.W.2d at 290 ["It seems to

be the settled rule of the law that the lien created by the abstract of a judgment . . . does

not attach to an equitable title."]. Neither does the presence of a fraudulent transfer cause

an abstract of judgment to relate back to the time legal title was held in the debtor.

*Gamer*, 41 S.W.2d at 359 ["The filing of the abstract of that judgment could not relate

back and create a lien on property theretofore owned by the [judgment debtor] and not

owned by it at the time of such filing."]; *see also* 48 TEX. JUR. 3d *Judgments*, §585 (2006)

---

[9] Setting aside the prelude of caselaw which arose when fraudulent transfers were considered
void rather than voidable. *See supra* note 8.

-10-

["Unless otherwise modified by recording laws, the statutory lien of a judgment is restricted to the actual interest of the judgment debtor either existing at the time of filing and recording the judgment, or thereafter acquired. Filing of an abstract cannot relate back to establish a lien on property previously owned by the debtor but disposed of by the debtor prior to establishment of the lien."].

*Gamer* arose on facts more compelling than those currently before the Court. After a jury returned a verdict against the Gamer Paper Company, but before judgment was entered on the verdict in favor of Love, the Gamer Paper Company fraudulently transferred real property to Charles Gamer. Despite Love's subsequent abstracting of the judgment, the court held that Love's recourse was limited to his right to bring a fraudulent transfer action, and that his abstract gave him no right directly against the transferred property. *Gamer*, 41 S.W.2d at 359 ["When [the abstract] was filed the legal title to the property was in Chas. Gamer, Sr., and the judgment lien did not attach to it because of that fact, even though it could be said that the judgment creditor would have the equitable right by suit to cancel that deed . . . , and establish and enforce an equitable lien on the property to pay the judgment on the ground that they were made for the purpose of defrauding creditors of the corporation."].

The result cannot be different on the present facts.[10] Hibernia's abstract of

---

[10] The Court notes the inconsistency of this result with the language of *Criswell* but finds *Goff* to be the binding precedent on the issue. Compare *Goff*, 812 F.2d at 933 ["The [properly abstracted] judgment lien attaches only to real property in which the judgment debtor has legal title; it does not attach to property in which the debtor has only equitable title."] with *Criswell*, 102 F.3d at 1418,

judgment cannot relate back to attach to property previously owned by the Debtors (but transferred not only prior to the filing of the abstract of judgment, but actually prior to the time that they had even been sued. Hence, the transfers in settlement of the fraudulent transfer action enabled Hibernia to receive more than it would have received if the case were under Chapter 7, the transfers had not been made, and Hibernia had received payment of such debt to the extent it would have under the other provisions of the Bankruptcy Code.

This decision is legally compelled, but it also achieves an equitable result. In the scheme of the Bankruptcy Code, creditors wishing to attain a status greater than that of an unsecured creditor must complete any processes necessary for such status before the ninetieth day preceding the bankruptcy filing, or assume the risk that the steps taken after the ninetieth day preceding the filing will be undone by the trustee. By this mechanism the Bankruptcy Code protects one of its fundamental tenets: the preservation of equality among similarly-situated creditors. As a judgment creditor, Hibernia certainly had the right to bring a fraudulent transfer action against the debtor, but such action needed to be fully resolved by the proverbial stroke of midnight on the ninetieth day preceding the bankruptcy filing. Simply bringing the action before the deadline was insufficient, as was

---

["Cullen's filing of the abstract of judgment created a lien which therefore attached to this equitable interest of Criswell and constituted an avoidable preference under §547(b)."]. "[W]here two previous holdings or lines of precedent conflict, 'the earlier opinion controls and is the binding precedent in the circuit.'" *Billiot v. Puckett,* 135 F.3d 311, 316 (5th Cir. 1998) (quoting *Society of Separationists, Inc. v. Herman,* 939 F.2d 1207, 1211 (5th Cir. 1991)). Thus, *Criswell* is binding on the issue of whether a transfer of an equitable interest can give rise to preference liability, but not on the issue of the effect of abstracting a judgment in a county where the only interest held by the debtor is an equitable one.

filing an abstract of judgment after the property had been transferred. Despite Hibernia's

diligent efforts to transform itself from a judgment creditor to a lienholder, it was not able

to timely complete the necessary steps. It must accordingly take its rightful place among

the class of unsecured creditors and the assets which it sought as its exclusive security

will instead be used to benefit the entire class.

### Conclusion

Concluding that the property transferred to Hibernia in settlement of the state court

fraudulent transfer action constituted property of the bankruptcy estate, that the transfers

enabled Hibernia to receive more than it would have otherwise received under a chapter 7

proceeding, and in acknowledgment that Hibernia has conceded the existence of the other

elements of a preferential transfer under 11 U.S.C. §547, the Court concludes that the

Motion for Summary Judgment filed by Defendant, Hibernia National Bank, should be

denied and the Motion for Summary Judgment filed by the Plaintiff, Bob Anderson,

Chapter 7 Trustee, should be granted to the extent that the referenced transfers to

Hibernia shall be avoided under §547, and recovered by the Plaintiff-Trustee under 11

U.S.C. §550.

However, the entry of a judgment in the Plaintiff's favor is precluded at the present

time because the Plaintiff's Motion did not establish, as a matter of law, the value of the

properties transferred, which is the recovery sought from Hibernia by the Plaintiff's

complaint. In the absence of any subsequent stipulation by the parties with regard to the

-13-

value of the transferred properties, a trial on that singular topic must be conducted. Thus, the parties to this adversary proceeding shall confer no later than Friday, May 4, 2007 in order to develop a proposed plan for the scheduling of the trial of the complaint in this adversary proceeding and related pre-trial deadlines. A proposed plan for the scheduling of the trial of the remaining issues in this adversary proceeding shall be filed in writing with the Court by the parties on or before Friday, May 18, 2007 which shall set forth their agreements, or alternative proposals, concerning the following matters:

    a.    a good faith estimate of the time which the Court needs to reserve for trial of this action; and

    b.    the identification of any days/weeks during June through September, 2007 which the parties or their counsel shall be unavailable for trial.

The Court shall review the information submitted by the parties and thereafter issue a final scheduling order in light of the Court's schedule and the circumstances of this case. Appropriate orders shall be entered consistent with this opinion.

Signed on 04/23/2007

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE

-14-